IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SHARON LONG,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br><br>Defendant. | ) | Case No. CIV-09-036-FHS |

**REPORT AND RECOMMENDATION**

Plaintiff Sharon Long (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant - taking into account his age, education, work experience, and RFC - can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on October 10, 1955 and was 52 years old at the time of the ALJ's decision. Claimant obtained her GED. Claimant worked in the past as an assistant manager and sales clerk. Claimant alleges an inability to work beginning October 31,

2004 due to degenerative disk disease of the cervical and lumbar spine, status post cervical fusion and plating at C5-6.

**Procedural History**

On January 18, 2005, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*). Claimant's application was denied initially and upon reconsideration. On March 15, 2005, an administrative hearing was held before ALJ Michael J. Kirkpatrick in Paris, Texas. On September 21, 2007, the ALJ issued an unfavorable decision on Claimant's application. On November 13, 2008, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the residual functional capacity ("RFC") sufficient to perform her past relevant work as an assistant manager and sales clerk.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in: (1) failing to engage in a proper credibility analysis; (2) finding Claimant is

able to sustain employment in her past relevant work; and (3) failing to give the opinion of a treating physician proper weight and failed to fulfill his affirmative duty to re-contact the treating physician.

**Credibility Analysis and Weight Given to Treating Physician's Opinions**

In his decision, the ALJ noted Claimant's statements of "severe pain in her neck, low back, arms, and hands, that she had muscle spasms daily, that she spent most of each day resting and taking medication, etc." He concluded, however, that "her allegations are unsupported by the credible medical evidence of record." (Tr. 29-30).

Claimant underwent a cervical diskectomy and fusion with hardware at C5-6 in November of 2004. (Tr. 158). Claimant had suffered pain and received treatment for back and neck pain for years prior to the surgery. (Tr. 127, 129-31, 138, 145, 147, 149, 169-70, 223-48).

The ALJ found Claimant rarely sought medical treatment and the treatment she has received was conservative. He noted MRI testing was not done on Claimant's lumbar spine and x-ray testing in November of 2004 was negative. (Tr. 30). An x-ray of Claimant's cervical spine performed post-surgery in January of 2005 showed Claimant's fusion was without complications. The testing, however,

also revealed mild disk degeneration at C6-7. (Tr. 156).

In finding Claimant's allegations of disabling pain and limitations to be unsupported, the ALJ cites as an example the circumstances at the consultative examination by Dr. Terry L. Kilgore conducted on May 26, 2005. The ALJ noted that Dr. Kilgore found Claimant demonstrated only mildly reduced range of motion of the lumbar spine and cervical spine, with normal sensory reactions in both upper and lower extremities, normal heel and toe walking, and negative straight leg raising. (Tr. 30, 173).

The ALJ discounts Claimant's credibility on her alleged limitations and pain due to "no medical evidence of bed sores, muscle atrophy, muscle weakness or wasting, weight gain or weight loss, or any other such evidence that she is as inactive as she is not alleging." (Tr. 30). He found the medical evidence showed Claimant has normal strength and muscle tone. Id.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

The ALJ's assertion that Claimant's has only received

conservative and infrequent treatment of her back condition as justification for discounting Claimant's credibility is not supported by substantial evidence. As noted above, Claimant repeatedly sought treatment prior to the diskectomy and fusion surgery. Thereafter, Claimant continued to seek treatment from her primary treating physician, Dr. Victoria Pardue. In a July 14, 2005 treatment note, Dr. Pardue noted Claimant's complaints of neck and low back pain while she still was taking Flexiril and Neurontin for her condition. (Tr. 189). Dr. Pardue recorded Claimant was unable to look down due to pain, experienced right toe numbness, pain while sitting to watch television or ride in a car, problems with eating and disrupted sleep. Id.

Claimant received Darvocet for her pain in an August 15, 2005 visit to Dr. Pardue. (Tr. 188). On December 14, 2005, Dr. Pardue noted Claimant had right arm pain and reduced grip which causes her problems in holding a coffee cup or pouring water. (Tr. 187).

On April 19, 2006, Claimant was again attended by Dr. Pardue, who completed a Lumbar Spine Residual Functional Capacity Questionnaire. Dr. Pardue stated she had been treating Claimant every two to three months for 11 years. (Tr. 252). She opined that Claimant's lumbar disease would continue to progress and will not improve. Dr. Pardue found Claimant to be in constant pain at

L1 to the coccyx which radiates to her left leg. The pain occurs with bending on lifting and standing and ranges from mild to severe depending with activity. Claimant requires pain medication to tolerate the pain when it is severe. Id. In her assessment, Dr. Pardue indicated Claimant "frequently" experiences pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks. She also notes side effects from medication occur with Claimant, including drowsiness and dizziness. (Tr. 253). Dr. Pardue determined Claimant could walk two city blocks without rest or severe pain and could sit for 30 minutes at one time. Id.

She estimated Claimant could stand for 15 minutes at one time, stand or walk in an 8 hour day less than 2 hours, and sit about 2 hours. Claimant must walk every 15 minutes for 10 minutes, will need a job that permits shifting at will and allows unscheduled breaks every 30 minutes of 10-15 minutes in duration. Dr. Pardue restricted Claimant to rarely lifting and carrying less than 10 pounds and never weight above that amount. (Tr. 254).

She also estimates Claimant can rarely twist, stoop, and climb stairs and never crouch/squat and climb ladders. Claimant is found to have significant limitations with reaching, handling or fingering. Claimant may also grasp, turn and twist objects 10% of

an 8 hour day, engage in fine manipulation 15% of an 8 hour day, and reach 5% of an 8 hour day. Her condition is likely to produce good days and bad days and she is likely to be absent from work more than four days per month. (Tr. 255).

Dr. Pardue also completed a Cervical Spine Residual Functional Capacity Questionnaire with regard to Claimant's condition. She noted Claimant, in her opinion, had chronic pain/paresthesia with signs of tenderness, muscle weakness, chronic fatigue, weight change, impaired sleeping, abnormal posture, problems dropping things, and reduced grip strength. Dr. Pardue found significant limitation in Claimant's motion. She estimated Claimant's range of motion to be extension - 50%, flexion - 50%, left rotation - 25%, right rotation - 25%, left lateral bending - 10%, right lateral bending - 5%. (Tr. 256).

Dr. Pardue noted severe headache pain associated with Claimant's cervical spine impairment which brought about vertigo, weight change, visual disturbances, nausea/vomiting, malaise, inability to concentrate, and exhaustion. The frequency of Claimant's headaches is estimated at 5 per month, lasting 1-4 hours. Dr. Pardue does not believe Claimant to be a malingerer and her impairments are expected to last at least 12 months. (Tr. 257-260).

Claimant continued to experience back pain, leg, and foot pain and seek treatment in visits to the Hugo Medical Clinic on April 19, 2006, July 18, 2006, and December 6, 2006. (Tr. 265-67). The last report indicates Darvocet was not helping for the pain in her lower back. (Tr. 265).

The weight of the opinions of Dr. Pardue as Claimant's treating physician becomes the paramount issue bearing upon Claimant's credibility. The ALJ discounts Dr. Pardue's opinions, stating her treating records do not support the extent of her limitations. The ALJ is also critical of Dr. Pardue's failure to send Claimant to another physician for further, apparently more aggressive treatment - however that term is defined by the ALJ. Naturally, Dr. Pardue's treatment notes are not going to reflect specific restrictions or limitations associated with Claimant's ability to engage in gainful work activity - an expectation apparently held by the ALJ. Dr. Pardue's notes indicate chronic, consistent, and severe pain stemming from Claimant's cervical and lumbar areas. Her treatment began in a substantially aggressive manner with a fusion and diskectomy. Claimant's pain complaints continued with treatment through medication. The level and precise pharmacology of that medication is best left to the medical professional rather than either the ALJ or this Court.

With regard to the opinions of Dr. Pardue as a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6)

other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ in this case admittedly gave Dr. Pardue's opinions "little weight." The finding is not supported by substantial evidence and shall be re-evaluated on remand.

**RFC Assessment**

Claimant posed questions to the vocational expert at the administrative hearing which mirrored the limitations found by Dr. Pardue. Upon examination, the vocational expert found a person with such limitations would be unable to perform competitive work in the national economy. (Tr. 299). Since this Court has found the ALJ improperly rejected the opinions of Dr. Pardue as a

treating physician, the ALJ shall reassess Claimant's RFC on remand.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 10th day of September, 2010.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE